IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TAMARA DURYGINA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 04 C 1963 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| FIRST RESOLUTION MANAGEMENT ) | |
| CORPORATION and FIRST RESOLUTION ) | |
| INVESTMENT CORPORATION, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tamara Durygina has brought a two count amended putative class action complaint against defendants First Resolution Management Corporation ("FRMC") and First Resolution Investment Corporation ("FRIC") alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"). Defendants have moved for summary judgment on both counts and plaintiff has filed a cross motion for summary judgment on Count II. For the reasons set forth below, defendants' motion for summary judgment is granted as to Count I and denied as to Count II. Plaintiff's motion for summary judgment on Count II is granted.

## FACTS

Plaintiff was issued an AspireVisa credit card through CompuCredit Corp. The creditor was Columbus Bank and Trust Company of Columbus, Georgia, a Georgia state chartered bank. Defendant defaulted on the account, resulting in accrual of interest. The defaulted debt was purchased by a series of debt purchasers ending with FRIC. Plaintiff alleges that the Illinois

Interest Act, 815 ILCS 205/1 et seq. limits the maximum amount of interest chargeable to plaintiff's account to 9%. Defendant FRMC, on behalf of FRIC, has attempted to collect interest at the rate of 25.5%.

## DISCUSSION

### Count I: Illinois Interest Act

In Count I, plaintiff asserts that defendants' attempts to collect interest at greater than 9% violates the Illinois Interest Act ("IIA"), and thus amounts to a violation of the FDCPA. In essence, plaintiff argues that the assignee of a debt can be prohibited by the IIA from charging the full interest on the debt if the assignee could not have contracted for the same interest rate as an original creditor. Because defendants are not licenced by the Illinois Department of Financial Institutions, they could not have contracted for a rate higher than that prescribed by the IIA.

Plaintiff has pointed the court to no case law adopting this argument. Indeed, it has been rejected by at least two judges in this district. For example, Judge Moran has held that the "IIA regulates only the origination of loans and not the assignment of rights. To hold otherwise would allow a debtor to receive a better interest rate than was bargained for, simply because his account was assigned to an unlicenced entity. As long as defendants charged an interest rate that was less than or equal to the amount originally contracted for, plaintiff's claim must fail." Vickey v. Asset Acceptance, LLC, 2004 WL 1510026 at *2 (N.D. Ill. 2004). Judge Moran relied on Olvera v. Blitt & Gaines, 2004 WL 887372 (N.D. Ill. 2004), in which Judge Kennelly, after thoroughly reviewing the statutes involved, held that the IIA regulates the origination of loans and credit agreements by lenders and creditors, but "does not deal with the interest an assignee who was not an original party to the credit agreement can charge on a matured debt." Id. at *4.

2

Plaintiff has presented nothing to suggest that the reasoning in <u>Vickey</u> and <u>Olvera</u> is in any way faulty. This court agrees with that reasoning and concludes that the IIA is inapplicable to the instant case. Accordingly, defendants' motion for summary judgment on Count I is granted.

### Count II: FDCPA

In Count II, plaintiff alleges that defendants have violated the FDCPA by charging 25.5% interest, a rate higher than authorized by the original credit card agreement. Defendants argue that the credit agreement sets forth a fixed default rate of 25.5% and, even if it does not, any overcharge was the result of a bona fide error and thus not actionable under the FDCPA. <u>See</u> 15 U.S.C. § 1692k(c). Defendant is wrong on both accounts.

First, despite defendants' repeated representations, the contract in question contains no provision setting a fixed default interest rate. Defendants cannot create such a provision by submitting an affidavit from someone from Aspire (the originating creditor) who has interpreted the contract as so providing. Neither defendants nor their affiants point to any provision in the contract setting a fixed rate, because the contract clearly indicates that the delinquency rate is variable.

> The Delinquency Monthly Period Rate applied in any billing cycle will be equal to 1/12 of the total of (a) the Prime Rate and (aa) the Delinquency Margin shown on the accompanying Summary of Terms.

The accompanying Summary of Terms indicates that the delinquency APR may vary but in no event will be less than 25%. The Delinquency Margin is set at 16.75%.

In the instant case, it is undisputed that as of August 11, 2003, when defendants first sent a collection letter to plaintiff, and December 1, 2003, when the second letter was sent, the Prime

3

Rate was 4%. The calculation of the minimal Delinquency APR results in 20.75%, triggering the minimal Delinquency APR of 25%. Therefore, defendants were not authorized by the contract to charge 25.5%, and their attempts to do so violated the FDCPA. See 15 U.S.C. § 1692f(1).

Defendants also argue that even if they overcharged, it was the result of a bona fide error. Section 1692k(c) provides that a "debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error not withstanding the maintenance of procedures reasonable adopted to avoid any such error."

The statute places the burden squarely on defendants to establish that the violation was both unintentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably calculated to avoid such errors. Defendants have presented no evidence of any procedures at all, let alone any procedures reasonably calculated to avoid the type of error presented. Indeed, defendants concede that they did not possess the Terms and Conditions of plaintiff's account until after this suit was filed; and even if they had that document it would have clearly indicated that the default interest rate could be no more that 25%. Blind reliance on a contrary representation from the originating creditor cannot qualify as a bona fide error. Even in Jenkins v. Heintz, 124 F.3d 824,834 (7th Cir. 1997), the case upon which defendants' rely, the court noted that the defendants had "offered unrebutted evidence of the procedures they followed when preparing to file suit to collect a debt to avoid errors and omissions that could result in an FDCPA violation." Because no such evidence was presented in the instant case, defendants have failed to present a question of fact as to the applicability of the bona fide error defense. Accordingly, the court grants plaintiff's motion for summary judgment on Count II.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted as to Count I (Illinois Interest Act) and denied as to Count II (FDCPA). Plaintiff's motion for summary judgment on Count II is granted. Because this case was filed as a class action, plaintiff is directed to inform the court of her intention to pursue class relief on Count II. This matter is set for a report on status on March 8, 2005, at 9:00 a.m..

**ENTER:** **February 25, 2005**

_____
**Robert W. Gettleman**
**United States District Judge**